Rel: March 28, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

_____

## CR-2023-0900

_____

## Desmond Rashad Whittaker

## v.

## State of Alabama

## Appeal from Jefferson Circuit Court, Bessemer Division (CC-18-528)

COLE, Judge.

Desmond Rashad Whittaker pleaded guilty to first-degree receiving stolen property, a violation of § 13A-8-17, Ala. Code 1975, and was sentenced by the Jefferson Circuit Court, Bessemer Division, to 36 months' imprisonment. Before pleading guilty, Whittaker preserved and

reserved for appellate review his argument that the trial court had erred in denying his motion to dismiss the indictment because the State had failed to comply with the Uniform Mandatory Disposition of Detainers Act, § 15-9-80 et seq., Ala. Code 1975 ("the Act"). We reverse and remand.

<u>Facts and Procedural History</u>

On April 17, 2018, Whittaker was indicted for first-degree receiving stolen property, a violation of § 13A-8-17. On November 16, 2020, Whittaker was sentenced in federal court for a separate offense, and he was committed to federal custody on January 7, 2021. On March 18, 2021, Whittaker filed a demand for a speedy trial on the receiving-stolen-property charge and for a final disposition of detainers, which was received by the District Attorney for Jefferson County, Bessemer Division, and the circuit clerk on April 5, 2021. On July 18, 2022, Whittaker filed a pro se request for a status update on his case. Whittaker was booked into the Jefferson County jail on September 29, 2023.

On October 10, 2023, Whittaker filed a motion to dismiss the indictment because, he asserted, that the State had failed to comply with the Act. Specifically, Whittaker argued that the State had failed to try

his case within 180 days of his demand for a speedy trial and for a final disposition of detainers, in violation of the Act, thus requiring dismissal of the indictment. In support of his motion, Whittaker presented a certified letter, dated March 18, 2021, from the warden of his federal facility, FCI Terre Haute, to the district attorney and the circuit clerk requesting disposition of his detainers. Whittaker also presented an October 2, 2021, letter from FCI Terre Haute to the district attorney advising that more than 180 days had passed and requesting the status of his charges. Finally, Whittaker presented a July 10, 2023, letter from the district attorney to FCI Terre Haute indicating that the district attorney had spoken to someone at the federal facility on July 5, 2023, and documentation of that telephone call was attached.

The State, on October 11, 2023, filed a response opposing Whittaker's motion to dismiss. The State argued that, in March 2020, the Supreme Court of Alabama had issued a state of emergency for the entire Judicial Branch of the State of Alabama due to the COVID-19 pandemic. The State argued that additional administrative orders of the Supreme Court of Alabama had subsequently been issued and that any delay in bringing Whittaker to trial was justified because of the COVID-

19 pandemic. No hearing was held on Whittaker's motion to dismiss, but the trial court, on October 30, 2023, denied Whittaker's motion.

On November 16, 2023, Whittaker reserved the right to appeal the denial of his motion to dismiss before he pleaded guilty. Whittaker subsequently pleaded guilty to first-degree receiving stolen property and was sentenced to 36 months' imprisonment. This appeal followed.

Discussion

On appeal, Whittaker argues that the trial court erred when it denied his motion to dismiss because, he says, the State failed to bring him to trial within 180 days, as required by § 15-9-81, Art. III (a), of the Act. (Whittaker's brief, pp. 10-24.) The State concedes that "Whittaker properly invoked his rights pursuant to" the Act on April 5, 2021. (State's brief, pp. 2, 6.) However, relying on Ex parte Brown, 368 So. 3d 951 (Ala. 2022), the State argues that Whittaker was "administratively unavailable [due to] the backlog that resulted not only from the suspension of jury trials but also from the implementation of safety measures once jury trials resumed." (State's brief, pp. 6-7.)

Both Whittaker and the State agree that, under the Act, Whittaker's trial should have occurred before October 2, 2021 -- or, under

4

Rule 1.3, Ala. R. Crim. P., by October 4, 2021. (Whittaker's brief, p. 18; State's brief, p. 2.) This Court has noted:

> "'The 180-day period may be tolled or otherwise exceeded for three reasons: (1) to allow the trial court to grant any necessary and reasonable continuance for good cause shown in open court with the defendant or his counsel present, § 15-9-81, Art. III(a); (2) for as long as the defendant is unable to stand trial, § 15-9-81, Art. VI(a); or (3) for any period of delay in bringing the defendant to trial caused by the defendant's request or to accommodate the defendant.'"

Greer v. State, 527 So. 2d 788, 789 (Ala. Crim. App. 1988) (quoting Saffold v. State, 521 So. 2d 1368, 1371 (Ala. Crim. App. 1987)). Here, the State argues that Whittaker was "unable to stand trial" because, it says, he was administratively unavailable until September 30, 2022, due to the COVID-19 pandemic. (State's brief, pp. 8-10.)

Between April 5, 2021, and April 12, 2023, no motions to continue were filed or hearings held. On April 12, 2023, the trial court entered an order setting the case for trial on June 5, 2023, which was changed to June 6, 2023, because of a state holiday. On June 6, 2023, the case was reset for a plea hearing on September 28, 2023. But on September 28, 2023, the trial court, sua sponte, reset the case for October 2, 2023. The record shows that Whittaker was not brought to Jefferson County until September 29, 2023. Thus, the record does not support that the delay

5

was caused by a "'necessary and reasonable continuance for good cause shown in open court with the defendant or his counsel present.'" Greer, 527 So. 2d at 789 (quoting Saffold v. State, 521 So. 2d 1368, 1369-70 (Ala. Crim. App. 1987); see also § 15-9-81, Art. III(a). There were no motions to continue filed, no setting of a hearing on any such motion (or any other motion), and no showing that either Whittaker or his counsel were present. Thus, there was no "'necessary and reasonable continuance for good cause shown'" under § 15-9-81, Art. III(a), of the Act.

There has also been no argument, either before the trial court or this Court, that any delay was at the request of, or to accommodate, Whittaker. Whittaker never made any requests for continuances or any pretrial motion other than his motion to dismiss filed on October 10, 2023. Moreover, even if the continuances from June 6, 2023, until November 16, 2023, had been granted to accommodate Whittaker, there is still the significant delay from April 5, 2021, until June 6, 2023, to consider.

The State argues that, on August 20, 2021, during the 180-day time limit set by the Act, the Supreme Court of Alabama issued Administrative Order No. 13 that "declare[d] a temporary state of

6

emergency for the entire Judicial Branch of the State of Alabama due to recent increases in COVID-19 infections in certain areas of the State of Alabama ...." (C. 45-46.) That order provided that, "[s]ubject to any party's substantive or constitutional rights," the trial courts were given an option to use "available audio/video technologies, rather than conducting in-person proceedings," until November 29, 2021. (C. 45-46.) The Supreme Court of Alabama extended that order until September 30, 2022. (C. 47.) However, those orders did not suspend jury trials. Nonetheless, relying on those orders, the State argues that Whittaker was "administratively unavailable for trial within 180 days of his request for final disposition." (State's brief, p. 9.) The State argues that the delay was "not the result of 'prosecutorial delay or inattention,'" thus, the trial court did not err in denying Whittaker's motion to dismiss. (State's brief, p. 9 (citing Brown, 368 So. 3d at 955-56)). The State's reliance on the administrative orders is misplaced.

Jury trials were suspended by the Supreme Court of Alabama only between April 30, 2020, and September 14, 2020. See Brown, 368 So. 3d at 956. In Brown, the Supreme Court of Alabama held that the 180-day period under the Act was tolled while jury trials were suspended and that

7

this Court "properly held that the 180-day limit 'did not expire until March 15, 2021, well after Brown pleaded guilty.'" Id. at 956 (citing Brown v. State, 368 So. 3d 946, 950 (Ala. Crim. App. 2021)). The subsequent administrative orders upon which the State relies did not suspend jury trials or in-person proceedings; rather, those orders allowed leeway, not otherwise provided by law, to assist with limiting in-person proceedings during an uptick of COVID-19 infections. Furthermore, the State fails to acknowledge that, in Brown, the Supreme Court held that the time for the running of the 180-day period was tolled only until September 14, 2020, when the order expressly suspending jury trials terminated, not until some later date. Id. However, even if the Supreme Court of Alabama's administrative orders had suspended jury trials until September 30, 2022, which they did not, the State still failed to comply with the Act. Specifically, the period from September 30, 2022, until the trial setting on June 6, 2023, is a period of 249 days, which still exceeds the 180-day limit set by the Act.

Finally, to the extent that the State relies upon local administrative orders that addressed the safety protocols for jury trials during the COVID-19 pandemic, the State's argument is not supported by the record

8

on appeal. No local administrative order is in the record, and the State did not cite any such order or argue to the trial court that safety protocols prevented it from trying Whittaker's case within the time limit set by the Act. Moreover, the State does not argue that local safety protocols suspended jury trials. Instead, the State solely relied upon the administrative orders of the Supreme Court of Alabama, which permitted the use of audio and video technologies in lieu of in-person proceedings when possible. The State recognizes that the administrative orders it relies upon "stopped short of suspending jury trials," but argues that the orders "encouraged suspension of in-court proceedings unless good cause could be shown that time was of the essence and proceedings must continue 'for the proper administration of justice.'" (State's brief, p. 8.)

The record supports, and the parties agree, that Whittaker invoked his rights under the Act on April 5, 2021. Once the Act was invoked, it was incumbent upon the State to procure Whittaker for trial within 180 days. The record shows that the State did not even attempt to procure Whittaker until July 5, 2023, which is 821 days after Whittaker's invocation of the Act. As the Supreme Court of Alabama noted in Brown,

> "the purpose behind the [Act]'s 180-day time limit is to 'counter the perceived evil when prosecutorial delay or

9

inattention fail[s] to provide a defendant incarcerated in another jurisdiction an opportunity for prompt disposition of charges. Such delay potentially prejudices a prisoner's opportunities and even his potential for concurrent sentences.' Pero v. Duffy, Civil Action No. 10-3107 (JAP), Dec. 16, 2013 (D.N.J. 2013) (not reported in Federal Supplement) (emphasis added); see also Morrison v. State, 280 Ga. 222, 224-25, 626 S.E. 2d 500, 503 (2006) ('The sanction of dismissal with prejudice, as provided by the drafters of the IAD and adopted by the Georgia legislature, … "is a relatively severe sanction designed to compel prosecutorial compliance with the procedures set forth in the IAD."' (quoting Camp v. United States, 587 F.2d 397, 399 n.4 (8th Cir. 1978)) (emphasis added)); and United States v. Kurt, 945 F.2d 248, 254 (9th Cir. 1991)."

368 So. 3d at 955-56. Even if we were to agree that the administrative orders allowing use of audio and video technologies had tolled the 180-day period, the clock would still have begun on September 30, 2022 (the last day the administrative orders allowing audio and video technologies applied). On September 30, 2022, the date that the 180-day clock would have begun to run, the State again delayed in acting for another 278 days, when it attempted to procure Whittaker on July 5, 2023, and the delay until Whittaker's final trial setting was even longer. Thus, the State's delay still exceeded the 180-day limit set by the Act to try Whittaker's case. As a result, the State violated the Act, and Whittaker is entitled to

relief. Under § 15-9-81, Art. III(d), Whittaker is entitled to an order dismissing the indictment with prejudice.

## Conclusion

For these reasons, the trial court's judgment is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Windom, P.J., and Kellum, Minor, and Anderson, JJ., concur.